## Warn *versus* Brown et al.

| 102 | 347 |
|-----|-----|
| 202 | ¹494 |
| 202 | ¹495 |
| 102 | 347 |
| 28 SC | ²465 |

1. Where in a deed the words "children" and "heirs" are used indiscriminately, in order to harmonize the two parts of the deed, the word "children" will be substituted for the word "heirs" in the habendum.

2. On May 10th 1831, D. granted unto A. and wife, "for and during their lives or the life of the longest liver or survivor of them, in trust to and for their children" a certain tract of land "to have and to hold the said messuage or tract of land, hereditaments hereby granted, mentioned or intended so to be, with the appurtenances, unto the said A. and wife, in trust to the only proper use and behoof of the said A. and his wife in trust for their heirs forever." In 1834 the land was sold at sheriff's sale under an execution on a judgment of a creditor of A. the grantee. A. died in 1857 and his wife in 1864. In 1879 the heirs of A. who claimed that under the above deed A. and his wife had estates for life, brought an action of ejectment against the defendant, who had been in possession forty-one years, and who derived title, through several mesne conveyances, from the sheriff's vendee.

*Held*, that the equitable title, whatever may have been its character, was from the beginning in the cestuis que trustent, who alone by themselves or their trustees had the right of possession and the right to recover possession, and that their right whether sui juris or under disability was barred as against the defendant and those holding under him, after thirty years from the date of the entry.

February 13th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK J., absent.

ERROR to the Court of Common Pleas of *Lycoming county:* Of January Term 1883, No. 25.

Ejectment, brought November 9th 1881, by William Brown and Mary M. his wife, Benjamin F. Allen, Jacob Allen, Frank Gette, and Martha Ann, his wife, Jacob Allen, David P. Allen William Allen, Susanna Allen, Mary C. Allen, Delia Allen, Enoch F. Allen, John Temple and Martha Jane, his wife, and Josephine Allen, against John S. Warn, for a tract of forty-five acres of land in Moreland township. Plea, not guilty.

On the trial, before CUMMIN, P. J., after the evidence had been taken, the parties agreed to dispense with the jury, and the facts as found by the judge, were as follows:—

The title to the land in dispute was in Nathaniel Allen, who on the 1st day of April, 1830, conveyed the same to Mary Doctor, her heirs and assigns. On May 10th 1831 Mary Doctor conveyed the land in controversy to Nathaniel Allen and Hannah his wife in the following deed:—

"This indenture, made the tenth day of May in the year of our Lord one thousand eight hundred and thirty-one between Mary Doctor, widow, of the one part, of the township of Moreland, county of Lycoming, and state of Pennsylvania, and Nathaniel Allen and Hannah, his wife, of the same place

[Warn *v.* Brown.]

aforesaid, of the other part; *whereas*, John Cummings, high sheriff of the county of Lycoming, by deed poll under his hand and seal, bearing date the eleventh day of February, A. D. 1812, for the consideration therein named, by virtue of a certain writ of *levari facias* therein recited, did grant and confirm unto Robert McClure, and to his heirs and assigns, a certain tract of land situate in Muncy Creek township, Lycoming county, and state aforesaid, containing three hundred and six acres and the allowance of six per cent., late the estate of William Powell with the appurtenances, to hold the same to the said Robert McClure, his heirs and assigns, forever, according to the Act of general assembly, in such cases made and provided, as by the said recited deed poll, duly acknowledged and entered among the records of the common pleas of the said county, relation thereunto being had will more fully appear; *whereas*, Robert McClure, by deed bearing date the second day of October, A. D. 1815, did convey unto John Kinney a certain part thereof, reference thereunto being had will more fully appear; *and whereas*, John Kinney, by deed bearing date the fifteenth day of November, A. D. 1815, did convey to William Chamberlin, Esq., and to his heirs and assigns forever, the above mentioned tract of land, reference thereunto being had more fully will appear; *and whereas*, William Chamberlin, Esq., by his deed dated the thirteenth day of December, A. D. 1829, for the consideration therein mentioned, did convey a part thereof to Nathaniel Allen, and to his heirs and assigns forever, reference thereunto being had will more fully and at large appear; *and whereas*, the said Nathaniel Allen, by his deed dated the first day of April, A. D. 1830, did convey, for the consideration therein mentioned, to Mary Doctor, and to her heirs and assigns forever, reference thereunto being had will more fully and at large appear.

Now this indenture witnesseth, that the said Mary Doctor, for and in consideration of the sum of fifty dollars, to her in hand paid, the receipt whereof she doth hereby acknowledge and forever acquit the said Nathaniel Allen, his heirs, executors and administrators, by these presents hath granted, bargained, sold, aliened, enfeoffed, released and confirmed, by these presents doth grant, bargain, and sell unto the said Nathaniel Allen and Hannah his wife, *for and during their lives or the life of the longest liver or survivor of them in trust to* and for their children, their lawful heirs, namely: William Allen, now begotten, and to their children and heirs to be begotten, being the issue of her, the said Hannah Doctor, by her said husband Nathaniel Allen, [here follows a recital of the tract described in the writ] *to have and to hold* the said messuage, tenement or tract of land containing forty-five acres, here-

[Warn *v.* Brown.]

ditaments, hereby granted, mentioned or intended so to be, with the appurtenances, *unto the said Nathaniel Allen and Hannah his wife, in trust to the only proper use and behoof of the said Nathaniel Allen and Hannah his wife,* in trust for their heirs forever, the said Mary Doctor doth, for herself, her heirs, executors and administrators, doth covenant and agree to and with the said Nathaniel Allen and Hannah, his wife, in trust for their heirs, by these presents, that she, the said Mary Doctor, the above mentioned tract of land, hereditaments and premises, hereby granted, mentioned, or intended so to be, with the appurtenances, unto the said Nathaniel Allen and Hannah, his wife, in trust, by these presents, that she, the said Mary Doctor, and her heirs, the above mentioned and described lot or piece of land, with the appurtenances, unto the said Nathaniel Allen and Hannah his wife, in trust, against her, the said Mary Doctor, her heirs, and against all and every other person or persons whomsoever, lawfully claiming or to claim will forever warrant and defend by these presents.

In witness whereof, the parties to these presents have hereunto interchangeably set their hands and seals, the day and year first above written.

her<br>
Mary X Doctor.  [SEAL.]<br>
mark

Signed, sealed, and delivered in
     presence of
     Benjamin Warn,
     John Shipman."

This deed is the common source of title of the parties to this issue and was shown by the plaintiffs.

On June 5th 1834, a judgment was entered in the common pleas of Lycoming county, to No. 182, May Term, 1834, in favor of John Smith against Nathaniel Allen for $20.23 with interest and costs, on which a fi. fa. was issued to August Term, 1835, and a levy and condemnation of the land in dispute was made. An al. vend. ex. was issued to No. 36 Jan. Term, 1838, on which the land was sold on February 8th 1838, to Simon Schuyler. On March 22d 1838, there was a deed poll from the sheriff to Simon Schuyler for the said land.

June 30th 1838, there was an assignment on the back of the deed poll from Simon Schuyler to John Doctor for said land. August 17th 1838, John Doctor and wife conveyed the land in dispute to John S. Warn, the defendant, since which time Warn has been in peaceable possession and enjoyment of the land in question.

All the deeds above recited were recorded and produced in evidence at the trial, except the deed from Nathaniel Allen to Mary Doctor, the existence of which is evidenced only by the

[Warn *v.* Brown.]

recital contained in the deed from Mary Doctor to Nathaniel Allen and Hannah his wife.

Nathaniel Allen died September 12th 1857, and Hannah Allen died January 12th 1864. This action was brought by the children and heirs of Nathaniel Allen and Hannah his wife to recover possession of the said tract.

The opinion of the court was, inter alia, as follows :—

" The rights of the parties to this controversy, under the paper title in evidence, are to be determined by the true interpretation of the deed of conveyance from Mary Doctor. What estate or estates were created thereby ? [I am of opinion that under the deed from Mary. Doctor, Nathaniel Allen and Hannah his wife, took an estate for their lives, and the survivor of them, with a vested remainder in fee in William Allen, the child born and living at the time of the execution of the deed, which opened for the purpose of letting in after-born children as their births respectively took place. The issue of such children as may have died during the lives of Nathaniel Allen and Hannah, or the survivor of them, take the shares of their respective parents, that is, with a vested remainder in the plaintiffs in this suit.] (Seventh assignment of error.) . . . . Under the evidence, I am of opinion that the plaintiffs are entitled to recover ; it is therefore ordered that judgment be entered in this case in favor of the plaintiffs for the land described in the writ."

Judgment for the plaintiffs for the land described in the writ.

The defendant took this writ, assigning for error, inter alia, the part of the opinion of the court above cited, within brackets.


*Henry Johnson* and *Robert P. Allen,* for plaintiff in error, —Plaintiffs are estopped from denying original title in Allen. for title in this case was in Allen before it vested in Mary Doctor. At any rate the defendant claiming under the sheriff's vendee took a good conveyance, for he had no notice of the unrecorded conveyance : Keller *v.* Nutz, 5 S. & R. 251. The words of limitation are such as to vest a fee or an estate tail in Nathaniel Allen. The language used is not such as imports a particular estate for life, sufficient to vest a remainder in fee. No remainder is referred to. It is a present disposition of an estate for life to trustees named therein for the special use of the cestuis que trustent. By the habendum a fee is clearly created, for the words used are " to have and to hold to N. Allen and wife in trust for their heirs." A particular intent must yield to a general, if both cannot exist together : Doebler's Appeal, 14 Sm. 9. The deed expressly defines the gran-

[Warn *v.* Brown.]

tor's intention to be that the children shall take only in the character of heirs, and from this, in connection with the whole deed, and particularly the habendum, the estate can only be construed as a fee in Allen, and is within the rule in Shelley's case. The words " in trust " are the governing words in this deed, and construction must be made on the entire deed: Ludwig *v.* Leonard, 9 W. & S. 48. A conveyance of land to A. in trust for the heirs of B., their heirs and assigns, is by force of the statute of Henry VIII., an immediate conveyance of the legal estate to the children : Leyburn *v.* Muench, 1 Pitts. R. 173. An account render would certainly lie here for the cestuis que trustent : Dennison *v.* Goehring, 7 Barr 175. The legal estate was at once executed in the cestuis que trustent : Dodson *v.* Ball, 10 Smith 493 ; Kay *v.* Scates, 1 Wr. 37. A cestui que trust may maintain ejectment : Warden *v.* Eichbaum, 2 Harris 127. But the statute of limitations is an absolute bar to the claim of the plaintiffs : Smilie *v.* Biffle, 2 Barr 52. The entry under the sheriff's deed was at least color of title and was adverse to interests of plaintiffs : Maus *v.* Maus, 30 Sm. 194. Thirty-one years' possession bars in every case : Weddle *v.* Robertson, 6 W. 486 ; Baldridge *v.* McFarland, 2 C. 339.

*Clinton Lloyds*, for defendant in error, presented no paper book.—The words for and during their lives, or the life of the longest survivor of them, plainly and clearly create a life estate. If a trust is created here, it is created in a very extraordinary and unusual manner. The habendum throws no such light upon its construction as that contended for on the other side. If the trust is to be for the use of Allen and wife for life, as plainly stated in the habendum, why have they not a trust to their own use for life ? But the only true consistent construction of the deed gives Allen an estate for life, and for the life of his wife, should she survive him, remainder over to the children. Allen died in 1857, whereupon the right by possession vested in his wife, who held it until 1864, when she died, when the plaintiffs succeeded to a complete estate in fee of the land. As they could not maintain an action of ejectment until after the death of Hannah Allen, in 1864, the Statute of Limitations did not run against them prior to this date : Zacharias *v.* Zacharias, 11 Harris 452.

Mr. Justice Gordon delivered the opinion of the court, March 5th 1883.

This case turns entirely upon the construction of the deed of Mary Doctor to Nathaniel Allen and Hannah his wife, dated May 10th 1831. Beyond that part, therefore, of the learned judge's opinion which we have in the seventh assignment of error, we need not go, for if it be true that, under that

[Warn *v.* Brown.]

deed Allen and wife took an estate, in the land in controversy, for their lives and the life of the survivor of them, with a vested remainder in fee to their children, then, since under the sheriff's deed, of March 22nd 1838, to Schuyler, the defendant held Allen's right, it must necessarily follow, that the plaintiffs, the remainder men, have no right of entry or action until his death, the Statute of Limitations could not begin to run, as to them, until that time: Ege *v.* Medlar, 1 Nor. 86.

If, however, the learned judge was mistaken in this view of the case; if by that deed Allen and wife took a fee in themselves, or if, under it, they held but in trust for their children, and did not thereby take a life estate to their own use, then, and in that event, it is certain, that, as against the defendant, the plaintiffs had no title, for they were effectually barred by the statute. We cannot, however, adopt the suggestion of the counsel for the plaintiff in error that a fee was vested in Allen and wife by virtue of the Mary Doctor deed. Possibly such might be the result if we consulted only the habendum of that instrument, for the word "heirs" as therein used, is ordinarily a word of limitation, and is definitive, not of the persons who are to take, but of the estate granted, and we agree that this word is to be accepted in its technical sense, unless the context requires a different construction: Huss *v.* Stephens, 1 P. F. S. 282. Here, however the context evidently requires that the word "heirs" be taken to mean "children," for the premises very clearly indicate that the estate, whatever it was, was intended to be vested, not in the grantees, who took but a trust, but in "their children, their lawful heirs, namely; William Allen, now begotten, and to their children and heirs to be begotten, being the issue of her, the said Hannah Doctor, by her husband Nathaniel Allen." Here we see the words "children" and "heirs" used indiscriminately, and that their "children" or "heirs" must take as purchasers, there can be no doubt, since one of them is mentioned by name. It follows, therefore, that in order to harmonize these two parts of the deed, we must, for the word "heirs" in the habendum, substitute "children." In other words, we must treat this word "heirs" as a designation of persons rather than of estate.

Moreover, as the whole of the preceding context precludes the idea of an estate of any kind other than a trust, in Nathaniel and Hannah Allen, we cannot allow the habendum to defeat the clear and obvious intent of the grantor. The purpose of the habendum is to define the extent of the interest granted, if that interest has not been already defined, and whilst it may be used to explain or qualify the grant, as set forth in the premises, it cannot be used to defeat it: Tyler *v.* Moore, 6 Wr. 374.

[Warn *v*. Brown.]

Nor, indeed, does this habendum require a construction which would make it repugnant to the body of the deed, for, as we have already intimated, the words "in trust for their heirs forever," evidently has reference to the previous use of the word "heirs" as a synonym for the word "children."

But the most careful examination of the deed fails to discover a life estate in Allen and wife to their own use. It may, indeed, be regarded as a matter of doubt whether this deed vests a fee in any one, and certainly not in the trustees, for they have only a life estate in trust, and that, as we have already said, not for their own use, but for the use of their children. It is not open to question, that for these children, they were to hold something in trust, but as the deed gave them nothing but a life estate, what else had they to hold as trustees? And if in this there was no use for the children, where shall we look for such use? This deed certainly puts into the parents nothing but a trust, to run for the period of their lives, for the benefit of their issue, and as there were no active duties to be performed by the trustees, we may regard the trust as executed, from its inception, in the equitable owners.

But whether this trust was executed or unexecuted, or whether the estate of the beneficiaries was only for the life of the parents or in fee, is of no special moment in the consideration of this case. At all events, the equitable title, whatever may have been its character, was, from the beginning, in the cestuis que trust, and to them, either by themselves or their trustees, belonged the right of possession, and also the right to recover that possession as against an intruder, by entry, or by an action of ejectment.

From this statement of the case it follows, that the right of entry of any and every person, whether sui juris or under disability, was barred, as against John S. Warn, the adverse claimant, and those holding under him, after thirty years from the date of his entry: Hunt *v*. Wall. 25 P. F. S. 413.

The judgment is reversed and a new trial ordered.