# ESTATE OF WILLIAM HARBSTER, DECEASED.

APPEAL BY JACOB HOLL ET AL., TRUSTEES, FROM THE OR-
PHANS' COURT OF BERKS COUNTY.

Argued March 4, 1890—Decided March 17, 1890.
[To be reported.]

(a) A testator directed that his executors invest one seventh of his estate in reliable securities for the use of his son, and pay the interest thereof to his son during the latter's life ; that after the son's death the principal should be paid to his children or children's children in the proper line of descent, but if the son should die without leaving direct descendants, said share should revert back to the estate and be inherited by the testator's children or their legal heirs:

## Statement of Facts.

1. These provisions did not constitute a bequest of the fund to the son for life, with remainder to his children, nor did they give him any estate or interest in the principal sum, or any right to its possession ; on the contrary, the trust reposed in the executors was such an active trust as made it necessary for them at all times to have possession of the fund, until its ultimate payment to the persons entitled to the principal : Haldeman v. Haldeman, 40 Pa. 29, distinguished.*

Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 268 January Term 1890, Sup. Ct.; court below, number and term not given.

On November 14, 1889, Howard E. Harbster petitioned the court below for a citation against John G. Mohn and Jacob Holl, executors of the will of William Harbster, deceased, requiring them to show cause why they should not pay to the petitioner the principal of a legacy bequeathed by said will. The petition averred that William Harbster died June 16, 1885, leaving a will dated May 11, 1885, duly admitted to probate, and containing the following provisions :

" 2. I give and bequeath to each of my six children, viz. : John Franklin Harbster, Howard Ellsworth Harbster, Emma Kensil, wife of William Kensil, Cecelia Augusta Mohn, wife of John Mohn, Annie Ringel Harbster and Mary Margaret Harbster, the sum of five hundred dollars in money, to be paid to them from the principal of my estate at the expiration of two years from my death, or at an earlier period, if my hereinafter named executors shall deem it expedient and wise.

" 3. I direct that all the residue and remainder of my estate, real and personal, shall be divided into seven equal shares or parts, and the same I give, devise, and bequeath as follows :

" One such seventh equal share or part to Cecelia Augusta Mohn, wife of John Mohn, and to her heirs and assigns forever.

" One such seventh equal share or part to Mary Margaret Harbster, and to her heirs and assigns forever.

" I further direct that my hereinafter named executors, or their successors, shall invest one such equal seventh share or

---

* Cf. Mannerback's Est., ante, 342.

part in good and reliable securities for the use of my son John Franklin Harbster.

" One such equal seventh share or part to be invested by my executors, or their successors, in good and reliable securities for the use of my son Howard Ellsworth Harbster.

" One such seventh equal share or part to be invested by my executors, or their successors, in good and reliable securities for the use of my daughter Emma Kensil, wife of William Kensil.

" One such equal share or part to be invested by my executors, or their successors, in good and reliable securities for the use of my daughter Annie Ringel Harbster.

" I further order and direct that the interest of the respective shares or parts bequeathed to my four last named children, in trust as aforesaid, shall be paid to each of them semi-annually for and during their natural lives, and after their death the principal shall go and be paid to their children or children's children in the proper line of descent; but if either of my said four last named children, whose shares are thus given in trust, shall die without leaving children or grandchildren, as aforesaid, or any direct descendants from their bodies begotten, then such share shall revert back to my estate and be inherited by my children or their legal heirs."

The petitioner averred further that John Mohn and Jacob Holl, the executors of said will, retained the share coming to the petitioner by item third of the will, under the impression that by the provisions of the will they became trustees thereof, and were obliged to take charge of and invest it, paying only the income to the petitioner; that the petitioner was twenty-eight years of age, of good habits, engaged in a flourishing manufacturing business as a partner, attentive to his work and fully able to manage carefully and economically the estate left to him by his father, the said testator, and his business interests were much hampered by the inadequate capital he had to invest; that, as he was informed, no such trust as was supposed by said executors was created by said will, but the principal of said bequest was due and payable to the petitioner.

The executors answered the petition averring that the will of William Harbster gave to the petitioner simply a life-estate. with remainder over to his children; that the petitioner was.

married and had two children and the respondents could not legally pay him the principal of the bequest; and that the respondents were the trustees of the petitioner under said will, and as such are bound by its terms.

The widow and four of the other children and legatees of William Harbster, deceased, subsequently joined and presented a petition to the court, stating that Howard E. Harbster was perfectly capable of managing his estate, that there was no necessity for the continuance of the trust for him, and asking that the principal be paid to him.

The case was heard upon petition and answer before SCHWARTZ, P. J., who filed an opinion and decree in part as follows:

This trust is active, if Howard E. Harbster's estate is one for his life; if on the contrary, it is absolute in him, it is dry and without a purpose: Dodson v. Ball, 60 Pa. 492.

The material question is to ascertain the interest the petitioner has in the estate. It is given to the executors for the use of Howard E. Harbster, the interest to be semi-annually paid to him for and during his life and after his death the principal to his children or children's children in the proper line of descent, and if he died without leaving children or grandchildren as aforesaid, or any direct lineal descendants from his body begotten, then the share to revert to testator's estate and to be inherited by his children and their legal heirs.

The word "children" in this will is without doubt used as a word of inheritance and limitation. This the will clearly demonstrates, when it says that in case he should die without leaving issue, then the property is to revert to his estate for his legal heirs. The word "children" when employed in wills is usually construed as a word of purchase, but here it is coupled with "grandchildren" and "if dying without issue of the body," and creates an estate-tail, which by the act of 1855 is enlarged into an absolute estate.

The will also bequeathed his share to the whole body of the heirs, and for that reason the same is an absolute bequest. This matter is ruled in Haldeman v. Haldeman, 40 Pa. 29.

The citation is made absolute.[2]  And it is ordered and decreed that Jacob Holl and John G. Mohn, executors of William

Harbster, deceased, do file and exhibit their account, so far as the same relates to the estate of Howard E. Harbster, within twenty days, upon the funds held in trust for said Howard E. Harbster, as executors and trustees of said William Harbster, deceased.[3]

—Thereupon the respondents took this appeal, specifying that the court erred :

2. In making absolute the citation.[2]

3. In making the decree for an account.[3]

*Mr. H. P. Keiser* (with him *Mr. J. H. Jacobs*), for the appellants :

1. The decree of the court destroys the intention of the testator, to which all technical rules must yield. The difference in the terms of the bequests which he makes to and for his children shows that his intention was to give Howard but a life-interest and to create an active trust. The law of Pennsylvania is not inimical to such trusts: Earp's App., 75 Pa. 123. The duties imposed upon the trustees by this will are such as constitute their trust an active one : Sheets' Est., 52 Pa. 257; Bacon's App., 57 Pa. 504. The property in the hands of the trustees is in fact all personalty, and courts are more anxious to support limitations in the case of personal estate than they are in the case of realty, and are more ready to construe the estate of the first taker as an estate for life : Bacon's App., 57 Pa. 504; Myers's App., 49 Pa. 111; Davis's App., 100 Pa. 201. Under the decisions cited, such a trust has been created as prevents the application of the rule in Shelley's Case.

2. But in any event Howard E. Harbster has but a life-interest in the bequest to him, for the reason that the words " children and children's children in the proper line of descent " are used by the testator as words of purchase, and the limitation over refers to a definite failure of issue, to wit, a default of children or grandchildren at the death of the first taker : Rapp v. Rapp, 6 Pa. 45 ; Bedford's App., 40 Pa. 18. " Children " is almost invariably a word of purchase and not of limitation, and the rule in Shelley's Case will be applied where that word is used, only when the terms of the will exhibit an intention that the remaindermen shall take as heirs of

the devisee, instead of themselves becoming the root of a new succession : Guthrie's App., 37 Pa. 10. The court below relied entirely on Haldeman v. Haldeman, 40 Pa. 29, which is materially different from this case, as there was no direction to·invest nor any direction to pay the principal to remaindermen, and the word "issue" was used in the limitation over, instead of the words children and grandchildren, as in our case. Again, the estates cannot coalesce unless they are both legal or both equitable : Little v. Wilcox, 119 Pa. 439.

*Mr. Henry D. Green*, for the appellee :

This will does not attempt to create a spendthrift trust, and there is no reason for the creation of any active and continuing trust. The language used should receive a strict legal construction. In all material points the facts are like those in Haldeman v. Haldeman, 40 Pa. 29, though the words of the will are in this case even stronger. Even in the respect that all the legatees were not placed upon the same footing, the Haldeman case resembles this, which answers the argument based upon the fact that in the present case two of the daughters were given their shares absolutely. We submit that the trust created by Harbster's will is in all respects similar to that created in the Haldeman case, and, like it, does not prevent the operation of the Rule in Shelley's Case. The case cited was approved and reaffirmed in Huber's App., 2 W. N. 579. There can be no doubt that William Harbster intended to make his son the real beneficiary, and the will discloses no intent to furnish protection against improvidence, etc., or to provide for possible children of his son. In the line of cases, including Earp's App., 75 Pa. 123 ; Ingersoll's App., 86 Pa. 240 ; Ashhurst's App., 77 Pa. 464 ; Ash's App., 80 Pa. 497 ; Phillips's App., 80 Pa. 472 ; and Fowler's App., 125 Pa. 388, the decisions were based upon special facts differentiating the cases from the present one.

OPINION, MR. JUSTICE GREEN :

The testator made no gift directly to his son Howard of any part of the residue of his estate. The whole of the residue was directed to be divided into seven equal shares or parts, two of which he gave absolutely to two of his daughters. He

then directs that his executors shall invest one seventh for each of two daughters and two sons; one of the latter being Howard, the appellee. The investment is to be made by the executors "in good and reliable securities, for the use of my son Howard Ellsworth Harbster." The testator then further directs "that the interest of the respective shares or parts bequeathed to my four last-named children, in trust as aforesaid, shall be paid to each of them, semi-annually, for and during their natural lives, and after their death the principal shall go and be paid to their children or children's children in the proper line of descent; but if either of my said four last-named children, whose shares are thus given in trust, shall die without leaving children or grandchildren, as aforesaid, or any direct descendants from their bodies begotten, then such share shall revert back to my estate and be inherited by my children or their legal heirs."

It will be perceived at once that none of these four legatees was ever to have any possession, estate, or interest in the principal sum of the several shares. There was no bequest to them for life, with remainder to their children. They could in no circumstances take anything but the interest accruing upon the securities in which the shares were invested; and this interest they could only get from the executors, whose duty it was to invest the shares in good and reliable securities, and pay to each of them, semi-annually, the interest, only, upon the amounts of the respective shares. In order to carry out this positive provision of the will, it is indispensable that the executors shall have in their own possession the whole of the residue set apart for them,—four shares,—and invest the same in good and reliable securities. Of course, this duty could never be performed if the principal of the shares is given to the four children of the testator, and we could not make a decree giving it to them absolutely, without striking down entirely the express and peremptory provisions of the will.

But, in addition to this, the executors are required not only to continue paying the interest to these four children during the entire period of their lives, but after their death they must still have the principal of the fund, in order to pay it over to the children or grandchildren of the legatees of the interest, and they must actually pay it over to such children or grand-

children or their lineal descendants. And still another duty devolves upon them in regard to the principal. If there are no children or other lineal descendants of any one of the original children of the testator who may die, the principal of the fund invested for that share reverts back to the testator's estate, and must be paid to the other children or their heirs. In this case the original children of the testator take the share of the one so dying, directly and absolutely, and this makes another and different disposition of that part of the residue. Now, if we give these several original shares of the residue to the legatees of the interest only, this part of the will can never be carried out. It is very clear, indeed, to us that the trust reposed in the executors is an active trust, which makes it necessary at all times for them to have possession of the fund until it is ultimately paid over to the persons entitled to the principal.

Further discussion is unnecessary. If authorities are needed, they can be found in Sheets' Est., 52 Pa. 257; Bacon's App., 57 Pa. 504; Myers's App., 49 Pa. 111; Davis's App., 100 Pa. 201; and other cases. Haldeman v. Haldeman, 40 Pa. 29, has no application, as its facts are entirely different and do not present the same question.

> The decree of the Orphans' Court is reversed at the cost of the appellee, and it is ordered that the petition of Howard E. Harbster, and all proceedings under it be dismissed, with costs.